William A. Doucette Jr.
10402 Larwin Ave.
Chatsworth, CA 91311
Ph. 818-718-6518 Cell Ph. 818-515-5526
Email: bbbill9226@yahoo.com
Plaintiff in Pro Per

FILED

2012 DEC 21 PM 3: 29

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CV12-10904 GW (MRWx)

William A. Doucette Jr.

Plaintiff,

vs.

International Alliance of Theatrical Stage
Employees (I.A.T.S.E.), an International Labor
Union; I.A.T.S.E. Local #33, a Los Angeles,
California-based chapter of I.A.T.S.E.; John
Cossette Productions, Inc., a California
Corporation; Nokia Theater / LA Live, a
California Corporation; Kodak (now Dolby)
Theater, a California Corporation; Academy of
Motion Picture Arts and Sciences, (AMPAS) a
California Corporation; Mr. Jeffrey Jackson, a
California individual; Mr. Kevin M. Harvey, a
California individual; Mr. Dennis Rudge, a
California individual; and DOES 1 through 10,

Defendants.

Case No. _____

**Complaint for Damages
And Equitable Relief**

**1 Age Discrimination**
**2 Lack of Fair
Representation**
**3 Breach of Fiduciary
Duties**
**4 Retaliation**

**Demand for Jury Trial**
   Yes ☒        No ☐

COMPLAINT

1

PAID

DEC 2 1 2012

Clerk, US District Court
COURT 4612

# I. JURISDICTION

1. The Court has Jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and an amount in controversy greater than $75,000.

2. The Court has Jurisdiction over 29 U.S.C. § 623(a)(1), titled the Age Discrimination in Employment Act ("ADEA") Case(s).

3. The Court has Jurisdiction over 29 U.S.C. § 623(d), titled ("ADEA") Retaliation Case(s).

4. The Court has Supplement Jurisdiction under 28 U.S.C. § 1367 over my complaints in the event that some of my relevant claims may not independently belong in federal court.

# II. VENUE

5. Venue is proper pursuant to the fact the Plaintiff lives and works within this district.

6. The oral, written or implied in fact contracts and the business documents that are part of the subject matter of this Complaint were entered into or executed in the County of Los Angeles, as well as in cities Pasadena and Long Beach.

7. In addition, the location for each of the primary acts and events at issue in this Complaint happened at numerous Venues: Universal Amphitheater, Shrine Auditorium, Hollywood Bowl; and Theaters: Nokia, Kodak (Dolby), Dorothy Chandler, Mark Taper, Ahmanson, Pantages, Greek; and Arenas: Los Angeles Memorial Coliseum and Sports Center and Staples Center, or the business locations of Local #33 office or I.A.T.S.E.'s West Coast Office which are all located throughout the greater Los Angeles County.

# III. PARTIES

COMPLAINT

2

8. Plaintiff's Name is <u>William A. Doucette Jr.</u>   Plaintiff resides at 10402 Larwin Avenue, Chatsworth, CA 91311.

9. Defendant: International Alliance Theatrical Stage Employees, President Matthew D. Loeb (AKA IA) General Office, 1430 Broadway, 20th Floor, New York, NY 10018. The IA is a labor union representing about 113,000 technicians, artisans, and craftspersons in the entertainment industry throughout the United States and Canada. Founded in 1893, the IA is now the largest union representing workers in the entertainment industry. IA members work in all forms of theaters, motion pictures, television productions, trade shows and exhibitions, television broadcasting and concerts. IA members also work in the equipment and construction shops that support various areas of the entertainment industry. The IA's General Office is responsible for any oral, written or implied in fact contracts and the business documents, created on behalf of the IA; ensuring and supervising the IA's alliance's Locals (throughout the alliance's jurisdiction) are following the IA's Constitution and Bylaws guidelines for the operation of the IA's individual Locals, and that those Local branches of the IA's office are operating in a democratic and fair manner towards the members of the IA alliance, and has the authority the resolve any Local vs. Local disputes. That process is part of the subject matter of this Complaint as it pertains to the IA Local #33 in Burbank, California.

10. Defendant: International Alliance Theatrical Stage Employees Local #33 (AKA Local #33) President George Blanch, 1720 W. Magnolia Blvd. Burbank, CA 91506-1871, Ph. 818-841-9233. Local #33 became a member of the IA's alliance in 1896. An application process to the IA's General Office gave Local #33 the authority to add additional terms and conditions to the IA's basic set of Constitution and Bylaws to be used to operate and govern Local #33's membership and Local #33's operational needs. Local #33's Constitution and Bylaws did include additional terms and conditions to the IA's basic Constitution and Bylaws.

WM DOUCETTE 10402 LARWIN AV.
CHATSWORTH, CA 91311, (818) 186518
bbbill9228@yahoo.com PRO SE

IA's General Office approved Local #33's Constitution and Bylaws with Local #33's additional terms and Local #33 became a member of the Alliance in 1896. At that point, Local #33's Officers had the fiduciary responsibility to follow and protect its own Constitution and Bylaws. Furthermore, implementing, enforcing and protecting the oral, written or implied in fact contracts and the business documents, ensuring and supervising Local #33 is operating in a democratic, legal and fair manner towards Local #33 members, including the protection and enforcement of the Local's Health and Welfare plans, Pension plans, and the Referral Hall system's operational rules. All of that process is part of the subject matter of this Complaint. Local #33 is a defendant in the EEOC case #480-2009-02558 EEOC's Dismissal and Notice of Suit Rights to Sue.

11. Defendant: John Cossette Productions, Inc., a California Corporation, 8899 Beverly Blvd., #100, Los Angeles, CA 90048, is one of the Production Companies that contracted Mr. Jackson as their Head Supervisor of their Electrical Department on John Cossette's Production of the Grammy Nominees Show at Nokia Theater starting November 31, 2008. Due to this arrangement, Mr. Jackson was given the opportunity to retaliate against me financially. That action caused me to file a Local #33 grievance. This eventually created the EEOC case #480-2009-01856 I filed against John Cossette Productions, Inc.

12. Defendant: Nokia Theater / LA Live, c/o Anshutz Entertainment Group, Inc., 800 West Olympic Blvd., Los Angeles, CA 90015. Mr. Harvey's (my Nokia immediate Supervisor) actions have made the company a defendant in EEOC case #480-2009-02559.

13. Academy of Motion Picture Arts & Sciences, AKA "AMPAS" a California Corporation, Producers of the Oscar Awards Show. Another Production Company that contracted Mr. Jackson as their Head Supervisor of their Electrical Department, for their 2008, 2009 and 2010 Oscar productions at the Kodak (now Dolby) Theater.

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 768518
bodull2286@yahoo.com   PRO SE

1       14. Defendant: Kodak Theater (Dolby Theater) a California Corporation, c/o

2   Theatre Dreams LA/Chi, L.P., 6801 Hollywood Blvd., STE 180, Los Angeles, CA

3   90028.

4       15. Defendant: Mr. Jeffrey Jackson, a California individual, Local #33

5   member, who is contracted by numerous Production Companies throughout the

6   Los Angeles area as their Head Supervisor of their Electrical Department.

7   Residence is unknown.

8       16. Defendant: Mr. Kevin M. Harvey, a California individual, Local #33

9   member, and my immediate Supervisor in the Electric Department of Nokia

10   Theater / LA Live Theater on the first day of the installation, Sunday, November

11   30, 2008, of John Cossette Productions, Inc., Production of the Grammy Nominees

12   Show. Supervisor Harvey is responsible for laying me off only 2 hours after the

13   start of the job and 1 1/2 hours after Supervisor Harvey gave me the notice that he

14   was laying me off, Supervisor Harvey called Local #33's Referral Hall to order a

15   replacement for me; thus, Mr. Harvey created a manpower shortage in next day's

16   manpower requirements by laying me off. Residence unknown.

17       17. Defendant: Mr. Dennis Rudge, a California individual, Local #33

18   member, and my immediate Supervisor at the Kodak (now Dolby) Theater's

19   American of Motion Picture Arts & Sciences (AMPAS) production of the 2010

20   Oscar Awards Show. Residence unknown.

21       18. Defendant: The Plaintiff is unaware of the true names and capacities of

22   the Defendants sued herein as Does 1 through 10 and therefore sues these

23   Defendants by such fictitious names. Plaintiff is informed and believes on that

24   basis, alleges, that each of the fictitious Doe Defendant(s) is responsible in some

25   sort of manner for damages suffered by the Plaintiff, as a former employee, or

26   member of the Defendants social and political group, as a promoter of the events at

27   the Defendants public facilities, or as an agent, partner, joint venturer or alter ego

28   of the named Defendants, or based on other facts and legal theories presently

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311
bdull92x@yahoo.com
PRO SE

COMPLAINT

5

unknown to Plaintiff. Plaintiff will amend this first Complaint (hereafter simply referred to as "Complaint") to allege the true names and capacities of such fictitiously named Defendants when the same is ascertained. References in this Complaint to the "Defendants" include references to each of the named Defendants and Does 1 through 10 except where the context clearly indicates otherwise.

19. Defendant: Plaintiff alleges that, as to each cause of action with regard to the named and Defendant Does 1-10 set forth therein, each of said Defendants at time(s) conspired amongst themselves and acted together to cause injury or harm to the Plaintiff.

## IV. STATEMENT OF FACTS

### CASE INTRODUCTION

20. I am a member of International Alliance of Theatrical Stage Employees Union Local #33 from July 1975 to present. This case has developed over a 10-year time span. By investigating and complaining, I became a target of retaliation, unfair treatment, increased scrutiny, and required to follow rules not enforced upon other Local #33 members.

21. I informed the I.A.T.S.E. International Union Office (overseer of all of the I.A.T.S.E. Union's Local offices) about my Local #33's activities (political and legal) illuminating the illegal actions/scams used and (age discrimination and unfair labor practices) encouraged by Local #33 Officers/members and the Local #33 Employer's representative. In doing so, their actions created a systemic discrimination and unfair job Referral Hall system. The IA's International Office's response in short said, Local #33 can do whatever it wants and we have nothing to say about it, and then sent Local #33 Officers a copy of my July 26, 2009 "Whistle Blowing Letter."

22. I also encountered harassment from the IA Office's Officers and

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 766518
bobll.9226@yahoo.com PRO SE

COMPLAINT

6

1 members as well as Local #33's Officers and members who used their positions of

2 authority and influence to encourage, coerce the Local #33 members working as

3 Employer's representatives to use their positions of authority or influence, with the

4 Production Companies and at the Venues/jobsites they were employed at, to take

5 retaliatory actions against me that either caused physical, social, reputational or

6 financial damages at the jobsites I have worked at or within the IA and Local #33

7 organizations.

8     23. An example and a consequence of why circumventing the Referral

9 Hall's rules is unfair and dangerous is when Local #33's Officers continue

10 allowing/approving the Employer's representatives (Local #33 members acting as

11 Supervisors/Heads of the different stagecraft departments) to request lower

12 seniority group members, usually friends of theirs (directly or indirectly) as

13 specialists. In doing so (bypassing higher seniority listed members who are truly

14 certified specialists, wanting, willing, and able to do the job), senior members

15 never received the opportunity to acquire that job who were on the Referral Hall's

16 waiting list, thereby effectively bypassing Local #33's job Referral Hall system's

17 referral rules. The consequence of this resulted in one of Local #33's younger and

18 very inexperienced members who received the job at Universal Amphitheater

19 (Gibson) in March 2012 that led to his death.

20     24. I experienced a life threatening action/response from Local #33 Officers

21 when my complaint letters of July 1, 2009 and July 26, 2009 to the IA office

22 (International President Loeb) concerning Local #33's age discrimination and

23 unfair labor practices and more would become known to them. Local #33 President

24 George Blanch stated, "Nice letters to the IA, I am hoping to filet you because of

25 the letters you sent to the IA office." This statement was made to me during a

26 conversation with Local #33's Recording Secretary Ms. Jane Leslie in the Union's

27 Local #33 office.

28     25. January 2003 I became a target of retribution/retaliation shortly after I

WM DOUCETTE 10402 LARWIN AV
CHATSWORTH, CA 91311 (818)
bbbill9226@yahoo.com  PRO SE ....oo518

1   refused to falsify a Union Local #33 document as I was ordered to do so by Local
2   #33's President George Blanch **for his political and financial gains.** President
3   Blanch **ordered me to notify the membership that according to IA President Loeb's**
4   **orders, Local #33 was to create a new election for one of the Officer positions that**
5   one of President Blanch's **friends did not get elected to.**

6   26. August 8, 2003 I was verbally assaulted from one of President Blanch's
7   political supporters (Universal (Gibson) Amphitheater's Flyman-Mr. Brian
8   Harmire) at his place of employment, which led to Mr. Harmire "calling me
9   outside" to deal with the issue like men.

10  27. September 6, 2003 while working at the Universal (Gibson)
11  Amphitheater, I was physically attacked (chest butting), this time during another
12  verbal assault. Once again, it was Universal (Gibson) Amphitheater's Flyman-Mr.
13  Brian Harmire doing the assaulting attempting to start a fight.

14  28. September 7, 2003 I called the Local #33 Business Agent Mr. Wright,
15  left message of Universal (Gibson) Amphitheater the incident and advised him that
16  I am already in contact with Mr. Charley Johnson's attorney (Mr. Johnson, Local
17  #33 member) about the Mr. Harmire assault against me, so the Local better not
18  ignore my complaints as usual.

19  29. The only Local #33 response was a letter sent to Universal (Gibson)
20  Amphitheater from Local #33 attorney warning the company that this sort of
21  behavior will not be tolerated. Nothing else was done and this type of behavior
22  continued.

23  30. On September 27, 2009 again at Universal (Gibson) Amphitheater I was
24  assaulted. This assault came from Mr. Harmire's Supervisor, Head Carpenter Mr.
25  John Beringhele. As usual, he too always verbally insulted me throughout any and
26  all of the workdays I worked at Universal (Gibson) Amphitheater, always in front
27  of crewmembers. At one point, Mr. John Beringhele deliberately dragged a 10-foot
28  long one-foot square aluminum truss over my legs (in front of the crewmembers)

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311
bobull9226@yahoo.com PRO SE
818/717-0518

COMPLAINT

8

1    while I was knelt down on the stage performing electrical work. One of the

2    crewmember's immediate comment to me was "He really hates you."

3        31. I have experienced two other physical assaults in 2010, as well as

4    numerous verbal threats, insults and being placed in embarrassing, and humiliating

5    situations designed to ruin my work reputation.

6        32. In January 2010 it became public knowledge the attorneys used by Local

7    #33 to negotiate Local #33's contracts also negotiates contracts for rival I.A.T.S.E.

8    Local #728 and I.A.T.S.E. International Office - West Coast Office at the same

9    time. This may explain why there are Local #33's contracts that contractually give

10   33% of Local #33's work to rival Local #728, with the blessings of the IA West

11   Coast Office.

12       33. Thereafter, Local #33 started to sign numerous contracts (without

13   membership approval) with Production Companies that hired Full Flood Lighting

14   Inc. for their lighting needs, the same 33% reduction of Local #33 supplied

15   manpower and allowed the electrical department's jobs to be fulfilled with rival

16   Local #728 members, while all of the other stagecraft departments' jobs were still

17   being fulfilled with Local #33 members. (I was part of the one-third of the work

18   force affected by Local #728 doing Local #33's electric department work.)

19       34. Local #33 Officers were making up bogus job titles to circumvent the

20   Referral Hall's rules and kept changing the rules of the Referral Hall system for

21   their own political and personal benefits.

22       35. The main purpose of Local #33 is to supply manpower to 30-40

23   Production Companies, who produce live and videotaped shows at different

24   Theaters, Venues and Studios that Local #33 has and has not had contracts with

25   throughout the calendar year. Most of these companies have year-round

26   employment and hire a basic number of Local #33 members as staff. However,

27   some of the Local #33 contracted companies have seasonal contracts for their

28   yearly productions of shows (mostly award type shows) in which their contracts

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH CA 91311 818-718-6518
bboull9226@yahoo.com  PRO SE

COMPLAINT

9

1   last from one day to two months long in order to produce their shows. These

2   seasonal (award type shows) Production Companies also contract Local #33

3   members as part of their production's basic installation staff. In either case, any

4   additional manpower needed to complement this basic staff is forwarded to Local

5   #33's job Referral Hall system. The Referral Hall then offers these job

6   opportunities to Local #33 membership in the non-discriminating manner as the

7   (federally approved seniority governed) Referral Hall's 'Dispatch Office

8   Procedures and Rules' including 'Local #33's Constitution and Bylaws' rules

9   dictate. However, this is no longer happening. Local #33's seniority-based Referral

10  Hall system is no longer operating as it was originally intended to do; therefore, the

11  system no longer supports me (and other Local #33 senior members) as it was

12  designed to do. This was my main source of income for over 35 years.

13      36. Around 1995, this change came about when a very small faction of

14  greedy Local #33 members figured out a payroll and job referral scam that would

15  be hard to detect, in order to circumvent the Referral Hall's rules. This payroll and

16  job referral scam succeeded mostly due to Local #33 Officers' lack of knowledge

17  of their fiduciary responsibilities with respect to Local #33's finances. For

18  example, Local #33 had not been given weekly copies of any Employer's payrolls

19  for an untold number of years. If you were to ask Local #33's Treasurer if all of

20  Local #33 members' dues, Employer-pension, health and welfare contributions

21  were correct and reflected the Referral Hall's dispatch records, with respect to the

22  pay scale the members were dispatched at, he would not be able to do so. He has

23  no knowledge if these items are in balance.

24      37. From 2002 to 2008, the Referral Hall/payroll scam became well known

25  to Local #33 management representatives throughout Local #33's jurisdiction. The

26  Carpenter and Property Departments' Heads were the main users of the payroll and

27  job referral scam. The few times I reluctantly worked in those departments, the

28  results were that I was laid off on the very first day of a multiple-day job, verbally

WM. DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 165518
bbALL92269@yahoo.com PRO SE

COMPLAINT

abused and a few times physically assaulted. However, I was able to avoid most of 'Local #33 and Employer representative-sponsored' financial retaliation by limiting the referral jobs I accepted to work in the Electric and Sound Departments of the Employers.

38. During the 2008 calendar year, Mr. Jackson and I were at numerous jobsites, working on the same production; Mr. Jackson usually working as the Production Companies' Supervising Head Electrician and I working as a Venue's employee, sometimes an assistant of the Company/Theater that Local #33 had a contract with. I witnessed on numerous occasions, Mr. Jackson making foul-ups, having temper tantrums, throwing objects around, verbally abusing crewmembers, and making three very offensive age discrimination remarks in front of me.

39. On September 30, 2008 I witnessed Mr. Jackson being told during a discussion with Ms. Paris Duval (Local #33 member who was questioning Mr. Jackson about his two previous age discrimination remarks) that I was the person that had informed Ms. Duval about Mr. Jackson's age discrimination remarks. However, before the end of this conversation about Mr. Jackson's previous age discrimination remarks, Mr. Jackson made his third age discrimination remark.

40. Two months after on September 30, 2008 incident (Par 39), Mr. Jackson had his first opportunity to retaliate against me when Mr. Jackson, acting as a Production Companies' Supervisor/Head Electrician of the Grammy Nominee's Show, told the Nokia Theater's Head Electrician (Mr. Kevin Harvey - my immediate Supervisor) to lay me off because he needed to make room on the crew for his Show-Savers, and Mr. Harvey did just that. Even after, I told Mr. Harvey about the reasons behind why Mr. Jackson constantly attempts to get me laid off, Mr. Harvey still laid me off.

41. Starting December 1, 2008, I started that filed a grievance with Local #33 against Nokia Theater. The result of that grievance was Nokia Theater's Stage Manager (Mr. Don Graham) said that the November 30, 2008 situation would not

WM.DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 768518
bball1922@yahoo.com   PRO SE

1   be repeated and when my legal actions progressed, Nokia Theater would make a

2   declaration/statement – 'the only reason Mr. Harvey laid me off is Mr. Jackson

3   wanted me to be laid off.' Nokia has never provided that declaration.

4      42. After the January 9, 2009 Nokia grievance meeting with Nokia, Business

5   Agent Mr. Wright showed me a copy of Local #33's attorney's opinion of my

6   December 1, 2008 Nokia grievance charges. In my opinion, if this is Local #33's

7   attorney's best attempt to represent and protect my legal, civil and or fair

8   employment rights, I see why my grievance accomplished nothing. In my opinion,

9   the attorney only stated what the company could do to win the grievance, and not

10   one mention of any of the state or federal laws that would apply to my grievance's

11   subject matters in order for me to win my grievance. To me, that is not protecting

12   my union membership rights, as he is obligated and hired to do.

13      43. During the investigation into my Local #33/Nokia Theater charges, it

14   was discovered that Mr. Harvey had lied to both Local #33 and Nokia Theater

15   personnel about the facts surrounding November 30, 2008 layoff and my

16   December 1, 2008 grievance, and thus created consequences for Mr. Harvey.

17   These subsequent consequences became Mr. Harvey's basis for his own future

18   retaliatory actions during the September 3-21, 2009 production of the Emmy

19   Awards Show at the Nokia Theater, where after only 4 days work, Mr. Harvey laid

20   me off again. Note Mr. Jackson was the Supervising Production Electrician again.

21      44. From August 2009 to May 2010, Local #33 and Employer representative

22   retaliations continued to escalate throughout Local #33's jurisdiction against me.

23      45. By the start of 2009, I too could no longer protect myself from Local #33

24   and Employer representative-sponsored financial retaliation, and my 2009 yearly

25   income decreased by $22,629. In addition, by early 2010, the Local #33 and

26   Employer representative-sponsored retaliatory actions increased and were not only

27   financial, they evolved into verbal and physical assaults. Local #33 members, who

28   were seen working with or for me (2010 Oscars production at the Kodak Theater)

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 266518
bjdn118320@yahoo.com  PRO SE

1  had their jobs threatened for doing just that.

2      46. One incident was at the start of the AMPAS Production Companies'
3  February 2010 Oscars production at the Kodak Theater. On the first day Mr. Lynd
4  Bingham, Mr. John Rose (both Local #33 members) and myself, were ordered into
5  a truck to unload the electrical equipment stored in it. However, we knew that Mr.
6  Jackson's assistant (Mr. William Blanch) did not know it was a rated job, and
7  before we could do the job, it needed to be approved by Mr. Jackson. After a few
8  minutes, Mr. Jackson's assistant (Mr. William Blanch) returned with the Kodak's
9  Head Electric Supervisor (Mr. Dennis Rudge) who stated "it has been approved to
10  unload the truck." Mr. Rudge then told Mr. Rose and Mr. Bingham to go unload
11  the truck and take the fat one too (referring to me). Thirty-five minutes later with
12  only four boxes of lights left in the 55 foot long truck to unload, Mr. Jackson
13  appears at the opening of the truck stating he wants everyone out of the truck now.
14  He did not give permission for us to unload the truck. It took 4 weeks and a threat
15  of filing a lawsuit to get the Local #33 Business Agent Mr. Wright to get us the
16  correct pay we had earned. Kodak Theater's Shop Steward (Mr. William Raleigh)
17  refused to argue the issue for the three of us. This was due to the fear that the
18  Staging Supervisor (Mr. John Bradley), who he would have to argue the issue with,
19  is the person who Mr. Raleigh was going to get an upgrade/promotion from in a
20  matter of days. Therefore, Shop Steward Mr. Raleigh did nothing to represent or
21  correct our legal pay issues.

22      47. Days after the (Par 46) issue started on the same 2010 Oscar Production,
23  I was made to sit in a chair in the corner of the theater's stage and do nothing while
24  the rest of the crew worked. The Nokia Theater's Supervising Head Electrician
25  (Mr. Dennis Rudge) started to call me his "Wallflower" and even took pictures
26  (February 27, 2010) of me while I sat there, while the management personnel of
27  both the Theater and Production Company walked by me staring at me. I was so
28  humiliated when I started to be called/labeled the "Wallflower" by co-workers.

WM DOUCETTE 10492 LARWIN AVE
CHATSWORTH, CA 91311 (818) 7186518
bobill9226@yahoo.com
PRO SE

COMPLAINT

48. On March 3, 2010 a group of people (two Assistant Lighting Directors, Local #33 Business Agent Mr. Wright, Local #33 Member/photographer ?, and Mr. Jackson) appeared in the spotlight/projection booth and in a grand form of an award presentation, presented the Oscar jacket buyers form to me. They were all there to ask me to please except the gift this year or it would make them all sad. (Note, I did not except the shirt in 2008 or the jacket in 2009 as a protest to how Mr. Jackson treated me.) I did fill out the form just to get them out of there. However, before Local #33 Business Agent Mr. Wright left he said IA President Loeb was visiting the Theater the next day and insisted that Business Agent Mr. Wright introduce me to President Loeb.

49. March 6, 2010 I overhear Kodak's Supervisor of the Electric Department Mr. Dennis Rudge telling Mr. Lee Swardsard (Local #33 co-worker) that working with Mr. William Doucette there may be a guilty through association problem that may affect your (Mr. Swardsard) job opportunities.

50. March 8, 2010, 1:30 a.m., the Riggers tried tipping over my Jeep while I was napping in it (between the end of the Oscar Show and the start of the Oprah Show's setup.) Note, the Riggers are a job classification/group that I have been complaining about due to their involvement with the Referral Hall rules circumventing scam.

51. March 4, 2010 I filed charges against Local #728 and sent them to IA President Loeb.

52. March 14, 2010 membership meeting – During the meeting, President Blanch and Business Agent Paolasso verbally attacked and were blaming me for Local #33 not being able to negotiate contracts because of my complaining about Local #728 and the Production Companies exercising unfair hiring practices, as it pertains to Local #33's Constitution and Bylaws with respect to the Local #33's Referral Hall's rules. That is when I was jeered and booed out of the union membership meeting and as the door was shut after I left, there was a thunderous

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 788-518
bdahll926@yahoo.com    PRO SE

COMPLAINT

applause sound coming from the room. The harassment by the Local #33 Officers continues even to this day. At another Local #33 membership meeting in October 2010, I was again shouted down and ridiculed at the membership meeting.

53. From December 2008 until I filed the EEOC complaints in August 2009, I exhausted all of the internal Union options to settle these disputes.

54. I even informed I.A.T.S.E.'s International Union President Loeb in New York of the actions of the Local #33 Officers.

55. International President Loeb, in-turn, made a ruling that did nothing to stop Local #33 Officers from discriminating against Local #33's membership. International President Loeb then forwarded my July 26, 2009 letter to Local #33's President Blanch.

56. President Blanch was so embarrassed and angry, that he forwarded my July 26, 2009 letter to Local #33 attorneys with instructions to the attorneys to sue me for the contents of my letters.

57. This is when President Blanch also made a verbal threat to assault me.

58. January 2008 working on the Golden Globe Awards at the Beverly Hilton. Production Company Crews Unlimited II's co-owner and acting Production Supervisor of the Carpenter Department (Mr. Allen Moses) repeatedly pokes his finger into my chest during a conversation. Telling me, "I do not know how hard it is to do his (Mr. Allen Moses) job" (witnessed by Local #33 co-worker Mrs. Liza Karlsen). This happened the day after Mr. Moses unjustly singled me out of the whole crew, yelling at me to shut up, across a very large and crowded room, and that I was endangering people's lives with my constant talking. However, I was doing no such thing, and Mr. Moses' Supervisors and Production Company co-workers, who were standing near me after that day's work, reprimanded him for his actions against me. 2008 was the last year I was able to get work on the Golden Globe Awards production.

59. February 5-9, 2008, I started working at the Kodak Theater on the 2008

WM DOUCETTE 19402 LARWIN AVE
CARSON, CA 90746-3311 (818) 765-518
bbpull9226@yahoo.com   PRO SE

COMPLAINT

Oscar productions installation as a Carpenter. The Oscar Production's installation, show and drag out was scheduled for February 5-28, 2008. On February 9, 2008, I was laid off. This was due to the fact that the Production Company's Staging Supervisor Mr. John Bradley's, "A-Team" so to speak, was originally unavailable for the job openings on February 5, 2008. Local #33's Referral Hall rules made those individuals in question non-referable to the Oscar production installation crew, because these Production cronies were working on the Grammy Awards Show, being produced at the Staples Center, for the first five days of the Kodak Oscar installation and were therefore unavailable for the job openings on February 5, 2008. Therefore, in order for Mr. John Bradley to get his "A team" on the Kodak Oscar installation crew, Mr. Bradley had to circumvent Local #33's Referral Hall's rules. This was accomplished by Mr. Bradley requesting on February 5, 2008 a set of Supervisors and Assistants that Mr. Bradley always intended to demote to the unrated and non-requestable Carpenter jobs, like I took, in the first place. After that, Mr. Bradley on February 9, 2010 then requests an all new set of Supervisors and Assistants to replace the February 5, 2008 set of requested Supervisors and Assistants he just demoted to the unrated and non-requestable Carpenter jobs, like the one I accepted, and then had their pay scale readjusted to the lower pay scale. Thereby, in effect, Mr. John Bradley gets to request his whole crew using this type of Referral Hall hiring scam; a scam Local #33 Officers are well aware of and do nothing about. In other words, I took a Carpenter job that the Production Company had no intention of honoring for the length of the job and in truth was being "Iced" for the people Local #33 Referral Hall rules deemed unavailable. With Local #33 knowing, allowing, and sometimes recommending this sort of "Icing of a job scam," I lost out on other job opportunities that I could have made more money on.

     60. All of my attempts within the Local #33 and Local #33 Employer system (for years) to correct this discriminating situation ended up by my filing of three EEOC cases on August 10, 2009.

WM.DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818)768518
bobbl19226@yahoo.com PRO SE

61. On February 10, 2011, the three cases filed August 10, 2009 were amended.

62. However, any of the discriminating and retaliatory actions that I have experienced due to actions of the Local #33 Officers, Employer representatives and Production Companies' Local #33 representative (who are all using a labor hiring and payroll scam for their own political and financial gains and doing so with complete impunity) following the February 10, 2011 amendments, have not been incorporated into another amendment even though I kept the EEOC investigators well informed of the actions taken against myself as they occurred. Furthermore, I was waiting for responses to my inquires to the EEOC as to how and when the EEOC wanted me to provide the ongoing retaliatory actions that continued during and after the February 10, 2011 amending paperwork that was being written. I never received any responses from the EEOC before I received the three EEOC's letters including the Dismissal and Notice of Rights to Sue for all three cases.

63. The three original defendants of the EEOC charges were Union Local #33, Nokia Theater and John Cossette Production Company. Within that group of agencies there is a "core group of discriminating-minded people" which has created the EEOC cases.

64. Within Local #33 there is a "core group of discriminating-minded people" who work and also travel from one Venue to the other as I do in order to obtain the best jobs with the highest pay and benefits possible. Usually when this "core group of discriminating-minded people" and I were not at the same location at the same time the working environment was great. However, when any of the people from that "core group of discriminating-minded people" and I found each other at the same jobsite, the harassment and retaliatory acts continued against me.

65. I can show how the mutual legal links and the information I have provided within my three case pleadings at the EEOC will reveal there is a Local #33 federally approved seniority-based job referral system being circumvented.

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 716-5518
bobbili8226@yahoo.com   PRO SE

COMPLAINT

1   This is only accomplished when a number of Local #33 Officers, Local #33

2   Employer representatives, and Production Company's representatives (co-

3   conspirators) who are sponsoring employment and payroll scams for their own

4   political and financial benefits.

5       66. These actions have created a job referral system now operating with a set

6   of non-federally approved set of rules controlling the job referral system. A system

7   which, under very close scrutiny, will reveal a job referral system violating

8   numerous federal and state labor and discrimination codes.

9               **Abusive/Harassment Remarks at the 2008 Oscars**

10      67. Defendant Mr. Jackson during the Kodak February 2008 Oscars

11  Production, was once again acting as the Production Companies' Electric

12  Supervisor. Mr. Jackson on February 14, 2008 (as I watched next the Mr. Tobias J.

13  Santerelli, Local #33 member) came to the cable staging area where Mr. Santerelli

14  and I were working. Mr. Jackson proceeds to tell Mr. Santerelli to go to the stage

15  and help (do not remember name). Mr. Santerelli commented that he was doing a

16  cable job for the front of the house crew and they are waiting for the cables. Mr.

17  Jackson said "just shut-up and do as I tell you. I do not care about that crew. Right

18  now I want you to go to the stage and help (do not remember name)." Keep in

19  mind, that this cable area was in the hallway next to the coffee area where crew,

20  Theater office and Production Company people were getting their coffee.

21      68. February 19, 2008 Mr. Jackson again during the Kodak February 2008

22  Oscars Production, while co-worker Mr. Rudy Horvatich and I were doing an

23  A.S.A.P. job for the Kodak's Supervising Head Electrician Mr. Jim Berger, were

24  stopped by Mr. Jackson and asked what we were doing. I told Mr. Jackson about

25  connecting the video control trailer's power. He told me to forget that and go get a

26  stinger and go see one of the Vari-lite guys. I told him, "Mr. Berger wants this

27  done A.S.A.P. and I'm not stopping his job until I finish it or he releases me from

28  the job." Mr. Jackson responded with, "I tell Mr. Berger what to do so that makes

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 886518
bob4u19226@yahoo.com   PRO SE

COMPLAINT

18

1   me your boss and I'm telling you to stop that job now and go get that stinger now."
2   I responded with, "I'm sorry but Mr. Berger is my Head of Department and he is
3   my boss; you're just a visitor." That is when Mr. Jackson got all red in the face and
4   stomped off looking for Mr. Berger. I found Mr. Berger first and explained what
5   happened and asked him what he wanted me to do. As Mr. Jackson walked up to
6   us, Mr. Berger told me to do what Mr. Jackson wanted, and I did. As I walked
7   away, I could hear Mr. Jackson starting to complain to Mr. Berger about me. Later
8   in the day, I found out that this is when Mr. Berger had to explain to Mr. Jackson
9   that as the Kodak's Supervising Head Electrician, he has taught his crew to finish
10  the A.S.A.P. jobs he gives to them before they do anything else.

11      69.  February 20, 2008, a day later, while I was doing another A.S.A.P. job
12  for Head Electrician Mr. Berger (namely clear the stage of all of the electrical stuff
13  before the start of the rehearsal in 10 minutes), that is when Mr. Jackson again
14  stops me. Mr. Jackson questions me about what I am doing and who told me to do
15  it. I told him what I was doing and that it was another A.S.A.P. job for Mr. Berger.
16  When I started to continue to remove the equipment sitting on the stage, Mr.
17  Jackson started to argue about its removal and demanded that I leave it right where
18  it was. I tried to explain to Mr. Jackson that I had already received the okay to
19  remove that equipment from the people installing it. However, that was not good
20  enough for him. When Mr. Lynd Bingham (Local #33 co-worker) heard what was
21  going on, he confirmed to Mr. Jackson that what I was telling Mr. Jackson was the
22  truth. That is when Mr. Jackson finally stopped harassing me and walked away in a
23  huff. About 15-20 minutes later, Supervisor Mr. Berger found me and stated, "I'm
24  not sure what you did or said to Mr. Jackson but Mr. Jackson wants you out of
25  here." Mr. Berger and I talked about the Mr. Jackson micro-managing problem and
26  concluded that from that point on my orders from Mr. Berger were to stop, drop or
27  quit whatever I was doing if Mr. Jackson asked for anything, even if it was a job
28  Mr. Berger assigned me to.

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 786518
bdoull0226@yahoo.com PRO SE

COMPLAINT

70. February 23, 2008, the day before the Oscars Awards Show's air day, Mr. Jackson stopped me while I was walking by him and offered an Oscar shirt to me. I said, "No thanks." He said, "It's from Full Flood." I said, "I know." He replied, "So you do not want it?" I said, "Nope." He said, "Why not?" I said, "Because I do not give gifts to people I do not respect and I do not take gifts from people who do not respect me." He said, "Okay." Mr. Jackson had a confused look on his face and I walked away. Mr. Lynd Bingham (who witnessed the whole conversation) told me later that Mr. Jackson turned to him and said, "What was that about?"

71. As far as I know, (at the Kodak Theater) this was Mr. Jackson's first attempt (after the February 20, 2008 stage incident) to get me laid off a job. Even though I wanted to file charges and grievances against the Theater, Production Company and Mr. Jackson for his actions, a conversation between my Kodak Supervisor Head Electrician Mr. Berger, Local #33's Business Agent Mr. Wright and myself convinced me it would be better for Local #33 if I let them work on the Mr. Jackson problem and talking to Mr. Jackson about correcting Mr. Jackson's hostile behavior. Therefore as a favor to them, I would not file any charges at that time and would wait for them to straighten out the Mr. Jackson situation.

72. Nokia November 30, 2008 Electric Department/Grammy Nomination Show. This is the call sometime around 9:30 a.m.-10:30 a.m. where Mr. Jackson had the Acting Supervisor Head Electrician Mr. Kevin Harvey replace me around 11:30 a.m.-12:30 p.m. At the end of the lunch break, I questioned Supervisor Mr. Harvey about why I was chosen to get laid off, and was this choice coming from him or from Mr. Jackson. He said Mr. Jackson was the reason. I asked if he agreed. He said, "I'm going along with it." I responded, "So you think I'm not good enough of an electrician for this job or good enough to run a spotlight?" He said, "I don't know about that." I said, "So you know, Mr. Jackson is just doing this out of retaliation." He said, "I don't know about that either. Mr. Jackson is just trying to

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 PRO SE
bball19226@yahoo.com 818-165618

COMPLAINT

20

get his Show-Savers in." Mr. Harvey's cell phone rings, he looks at the caller I.D. and says, "Speaking of Show-Savers." He then turns away from me and answers his phone with "Hello Mr. Santarelli" and walks away talking on his cell phone, speaking to Mr. Santarelli about how he cannot help it if Local #33 gave the jobs to other people, and he is sorry Mr. Santarelli did not get a job but Mr. Harvey told Mr. Santarelli when he was going to put the calls into the Local's Referral Hall, how could Mr. Harvey help it if they gave the jobs out before Mr. Santarelli called them. That was the last of that conversation I could hear as Mr. Harvey walked away and down stairs.

73. December 1, 2008 at Local #33 Office, I filed a grievance against Nokia Theater concerning their hiring and referral practices, because of the Production Company's Supervisor Mr. Jackson having me laid off on November 30, 2009 at Nokia Theater. (I also filed a grievance for Nokia's safety and health issues.) During a subsequent grievance meeting on January 9, 2009 with Nokia management (Mr. Don Graham), the management (Mr. Don Graham) reaffirmed that it was due to Production Company's Supervisor Mr. Jackson's request to have me laid off. The conversation discussed how these types of requests amount to nothing less that retaliation and age discrimination towards me. Part of the discussion also related to Mr. Jackson's retaliatory actions towards me because Mr. Jackson does not like or want me on any of his jobs, which is also a violation of the Referral Hall practices. Further discussions included how to stop future retaliations or violations of the hiring and referral practices as well. The end result of the meeting was Nokia promised to avoid this kind of practice from creating a hostile working environment.

74. Acts of retaliations are described under Federal Labor law Chapter 7 (1). Discrimination in Employment Relationships, (B) Particular Applications of Discrimination Provisions (1). Employer Discrimination Under NLRA § 8(a)(3) sub § 7:8 Constructive Discharge. Defined (in short) as a constructive discharge

WM DOUSETTE 10902 LARWIN AVE
CHATSWORTH, CA 91311 (818) 886518
bbbU12226@yahoo.com   PRO SE

COMPLAINT

occurs when the working conditions are so intolerable that a reasonable person in the plaintiff's position would feel compelled to resign. In my case, I could not take Local #33 and Employer representative-sponsored retaliations anymore, which reflect the conditions a constructive discharge encompasses. Therefore, by my experiencing employment conditions similar to the conditions that constitute a constructive discharge, I finally gave up and put in my retirement paperwork in May 2010.

75. However, I thought the harassment conditions might have changed by now, as it has been over 2 ½ years from when I retired to present. Therefore, I accepted work from Local #33's Referral Hall for one week in September 2010. I was wrong; the harassment has not stopped. I had only worked two days before I had friends calling me, asking why I was thrown out of the Hollywood Bowl and what happened. People at the jobsites were complaining to me about me being there after costing Local #33 over $60,000 for nothing. There were other sorts of complaints made to me as well. Therefore, by judging from that one-week experience, I do not think it is safe for me to work within Local #33.

## V. CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Age Discrimination in Employment Act ("ADEA")
### Violation of 29 U.S.C. § 623(a)(1)
### (As against all Named Defendant(s): and Does 1 through 10)

76. Violation of 29 U.S.C. § 623- prohibition of age discrimination

(a) Employer practices; it is unlawful for an employer-

WM. DOUCETTE, 19402 LARWIN AVE.<br>CHATSWORTH, CA 91311, (818) 768-6518<br>bndj1922@yahoo.com, PRO SE

COMPLAINT

1  (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate
2  against any individual with respect to his compensation, terms, conditions, or
3  privileges of employment, because of such individual's age;
4  (2) to limit, segregate, or classify his employees in a way which would deprive or
5  tend to deprive any individual of employment opportunities or otherwise adversely
6  affect his status as an employee, because of such individual's age; or
7  (3) to reduce the wage rate of any employee in order to comply with this chapter.

### AGE REMARK 1

9      77. Defendant Mr. Jeffrey Jackson on January 24, 2008 during the SAG
10  Awards installation at the Shrine Auditorium, while acting as the Production
11  Companies' Electric Department's Supervisor, made the following statement,
12  "Listen, you have your old ways of doing things and we don't do things your old
13  way anymore, we have new and better ways of doing things" to 69 year-old Local
14  #33 member Mr. Richard Tarczynski. Mr. Jackson made that statement during a
15  discussion between Mr. Jackson and Mr. Jackson's Production Assistant
16  Supervisor Mr. Allen Sysle, on how to retrieve a malfunctioning Vari-light that
17  was installed over a large hanging light box. When Mr. Rose and I were ready to
18  transfer the light to the balcony, I noticed there was no guild/safety line attached to
19  the light and I told the person on the truss, who was disconnecting the light from
20  the truss, to attach a line and Mr. Sysle stopped that from happening. I started to
21  explain why it was necessary and was told by Mr. Sysle to just shut up and do it
22  now. Within days of that incident and that story of Mr. Jackson's "new and better
23  ways" of doing the work, the story spread throughout Local #33 membership. In
24  doing so, Mr. Jackson became an embarrassment to Local #33 and a laughing stock
25  among the senior members.

### AGE REMARK 2

27      78. Defendant Mr. Jeffrey Jackson on February 15, 2008 during the Kodak
28  February 2008 Oscars Production, Mr. Jackson was again the Production

WM DOUCETTE 10402 LARWIN AVE CHATSWORTH CA 91311 (818) 768-6518 bbull19226@yahoo.com PRO SE

COMPLAINT

Companies' Electric Supervisor. I was walking by Mr. Jackson and the group of Local #33 workers located upstage right, who Mr. Jackson was working with or giving orders to, when Mr. Jackson made an enraged extremely loud and yet clear statement that could be heard at least 30 feet away. I and other people within the area heard Mr. Jackson say to that group of workers "I would rather have Local #728 people working for me because they are younger and faster than you guys and they do what I tell them, when I tell them, without any talking about it."

## AGE REMARK 3

79. Defendant Mr. Jeffrey Jackson on September 30, 2008 was working as a regular co-worker during a Hollywood Bowl Electric Department installation. Mr. John Rose and I witnessed Mr. Jackson having a discussion with another Local #33 member (Ms. Paris Duval) who was questioning Mr. Jackson about his two previous age discrimination remarks, and that I was the person that had just informed Ms. Duval about Mr. Jackson's age discrimination remarks. However, before the end of this conversation about Mr. Jackson's previous age discrimination remarks, this is when Mr. Jackson made his third age discrimination remark. This comment was made in front of and within an earshot of the Hollywood Bowl management. Witness Mr. John Rose and I overheard Mr. Jackson say to Ms. Duval, "The problem with Local #33 is that three-fourths of you are too old and useless to do this work anymore."

<div style="border:1px solid black">

## <u>SECOND CAUSE OF ACTION</u>

<u>Age Discrimination in Employment Act ("ADEA")</u>

(    <u>Violations 29 U.S.C. § 623 (c)(1)(2)(3)</u>    )

**<u>(As against all Named Defendant(s): and Does 1 through 10)</u>**

</div>

80. Violation of 29 U.S.C. § 623- prohibition of age discrimination

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311  (818) 766518
bbd4112228@yahoo.com   PRO SE

COMPLAINT

24

(c) Labor organization practices

It shall be unlawful for a labor organization –

(1) to exclude or to expel from its membership, or otherwise to discriminate against any individual because of his age;

(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's age;

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

81. Based upon actions or lack of actions on their part as so described in my statement of facts, the Defendants conspired to commit age discrimination through the use of false pretenses, made up titles, parole scams, hiring scams (Par 59) designed to circumvent the rules of Local #33's Referral Hall's system, unsubstantiated and unjust reasons to disguise their true reasons of laying off senior employees of Local #33. The fact that they replaced senior members either immediately or within a short period of time (Par 72), shows that there was still work to be done and with no justifiable legal reason to layoff the senior members, Which mean age was the deciding factor for the layoff.

82. Furthermore, with Local #33's Officers turning a blind eye to this sort of activity, and in some cases, may have used the described harassment and retaliatory actions explained within this complaint, have allowed the Defendants to accomplish their hidden goals of Age discrimination for their own personal political and financial benefits.

83. With this in mind and my statement of facts, no Local #33 member has any expectation of being fairly represented, when on a daily basis, Local #33's Referral Hall's rules and restrictions are being circumvented by and with the

WM. DOUCETTE 10402 LARWIN AVE.
CHATSWORTH, CA 91311 (818) 718-6518
bballer9236@yahoo.com PRO SE

COMPLAINT

approval of the same Officers of Local #33 whose job it is to protect the Referral Hall system from the exact kinds of violations of rules. Every day this happens, I have fewer and fewer opportunities to get a job through the Referral Hall and it costs me money and benefits.

---

## THIRD CAUSE OF ACTION

### Age Discrimination in Employment Act ("ADEA")

### (Fiduciary responsibility of officers of labor organization)

### Violation 29 USC § 501 (a)

### **(As against Defendant(s): and Does 1 Through 10**

---

84. Violation USC 29 § 501 – Fiduciary responsibility of officers of labor organization;

(a) Duties of officers; exculpatory provisions and resolutions void

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary of personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the

WM DOCKETT, 10202 LARWIN AVE
CHATSWORTH, CA 91311 (818) 7186518
bball19220@yahoo.com   PRO SE

1  constitution and bylaws of such a labor organization or a general exculpatory

2  resolution of a governing body purporting to relieve any such person of liability for

3  breach of the duties declared by this section shall be void as against public policy.

4      85. One of the other aspects/responsibilities of Local #33 Officers is that

5  Officers of I.A.T.S.E. Local #33 are also trustees of two joint management union

6  trust funds. These funds are for the benefit of the members of Local #33. The

7  Union members support the funds in unison with the Local #33 contracted

8  companies support as well. The Pension fund and the Health fund suffered losses

9  due to the above described age discrimination and forced high medical monthly

10  payments. I just received another notice of a reduction of the fund benefits. These

11  losses are an indirect consequence of the Union and Management's discriminatory

12  practices that I complained about. Local #33 Officers in response to my

13  complaining, started to allow the jobs that I and other Local #33 senior members

14  (who are already vested in the funds) would normally get, to be diverted to the new

15  or lower seniority members, for their (Officers) own personal and political

16  benefits.

17      86. Otherwise, why are none of the Officers/Trustees demanding an

18  immediate stop to any bypassing of the work intended for senior group members?

19      87. The Officers of Local #33 are not protecting the Referral

20  Hall's seniority system rules the way it was originally designed. In addition, with

21  every diverted job making the fund one more step closer to bankrupting the funds.

22      88. I am claiming the Officers of Local #33 are breaching their fiduciary

23  duties to protect the funds.

WM. DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 7186518
bobdll10226@yahoo.com  PRO SE

---

# FOURTH CAUSE OF ACTION

Age Discrimination in Employment Act ("ADEA")

( Retaliation Violation of 29 U.S.C. §623(d)  )

## (As against Defendant(s):

---

COMPLAINT

89. Age Discrimination in Employment Act ("ADEA")

Violation of 29 U.S.C. § 623 Prohibition of age discrimination

(d) Opposition to unlawful practices; participation in investigations, proceedings, or litigation

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

90. Plaintiff reallege and incorporate by reference the allegations of paragraphs 20 through 86.

## VI. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff requests:

1. For exemplary and punitive damages;

2. For attorney's fees as provided by contract and /or by statue;

3. For interest at the legal rate on all amounts awarded;

4. For the costs of suit incurred herein;

5. For any injunctive, compensatory damages;

6. For loss of income caused by Defendants: $22,629 (yearly income) for 2009  income of $89,917 compared to the earned 2008 income of $112,546;

7. For the calculated loss of (yearly income) income caused by Defendants for 2010. Using an average of $112,546/yr minus the amount I received through the Pension plan ($49,518/yr) equals $63,028/yr. which I have lost while collecting my pension;

8. For loss of income from forced retirement and benefits having to retire 8 years early;

9. For further and any other equitable relief as the court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Dated: _21 DECEMBER 2012_

Signed: _William A. Doucette Jr._

Print Name: _William A. Doucette Jr._

WM DOUCETTE 10402 LARWIN AVE
CHATSWORTH, CA 91311 (818) 885-18
DOcal1922s@yahoo.com   PRO SE

COMPLAINT

29

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Michael Wilner.

The case number on all documents filed with the Court should read as follows:

### CV12- 10904 GW (MRWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

William A, Doucette Jr
10402 Larwin Ave.
Chatsworth, CA 91311
Ph. 818-718-6518 Cell 818-515-5526
Email, bbbill9226@yahoo.com
Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| William A. Doucette Jr.<br><br>**PLAINTIFF(S)**<br><br>v.<br><br>*INTERNATIONAL ALLIANCE OF*<br>*THEATRICAL STAGE EMPLOYEES*<br>*(I.A.T.S.E),* ~~*ET, AL,*~~<br><br>**DEFENDANT(S).** | **CASE NUMBER**<br><br>**CV 12-10904** *GW (MRWx)*<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, *Re WILLIAM A DOUCETTE JR.*, whose address is *10402 LARWIN AVE CHATSWORTH CA 91311* _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Dated: ___12 -21 -12___

Clerk, U.S. District Court

By: _____
CHRIS SAWYER
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11                         **SUMMONS**

William A. Doucette Jr.

10402 Larwin Ave.

Chatsworth, CA 91311

Ph. 818-718-6518 Cell Ph. 818-515-5526

Email: bbbill9226@yahoo.com

Plaintiff in Pro Per

2012 DEC 21 PM 3: 29

FILED

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

William A. Doucette Jr.

           Plaintiff,

           vs.

International Alliance of Theatrical Stage

Employees (I.A.T.S.E.), an International Labor

Union; I.A.T.S.E. Local #33, a Los Angeles,

California-based chapter of I.A.T.S.E.; John

Cossette Productions, Inc., a California

Corporation; Nokia Theater / LA Live, a

California Corporation; Kodak (now Dolby)

Theater, a California Corporation; Academy of

Motion Picture Arts and Sciences, (AMPAS) a

California Corporation; Mr. Jeffrey Jackson, a

California individual; Mr. Kevin M. Harvey, a

California individual; Mr. Dennis Rudge, a

California individual; and DOES 1 through 10,

           Defendants.

Case No.: CV 12- 10904 GW (MRWx)

**Complaint for Damages And Equitable Relief**

**1 Age Discrimination**

**2 Lack of Fair Representation**

**3 Breach of Fiduciary Duties**

**4 Retaliation**

**Demand for Jury Trial**

    Yes ☒      No ☐

**COMPLAINT**

1

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

M, WILLIAM A. DOUCETTE JR

**DEFENDANTS**

INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES (I.A.T.S.E), et. al,

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

10402 LARWIN AVE, CHATSWORTH CA. 91311 PHONE 818-718-6518

**Attorneys (If Known)**

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

---

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ 400,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

AGE DISCRIMINATION and RETALLIATION

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | | | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | | ☒ 442 Employment | | **SOCIAL SECURITY** |
| | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | ☐ 861 HIA (1395ff) |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

---

**CV12-10904**

**FOR OFFICE USE ONLY:** Case Number:

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                   CIVIL COVER SHEET                                   Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| NEW YORK, VENTURA COUNTY | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _William Drake_ Date 21 DEC 2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |